1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| TASI FAAINAFLO LEMUSU, | ) Case No. CV 14-3023 JC |
| Petitioner, | ) |
| | ) MEMORANDUM OPINION AND |
| v. | ) ORDER DENYING PETITION FOR |
| | ) WRIT OF HABEAS CORPUS AND |
| GARY SWARTHOUT, | ) DISMISSING ACTION |
| | ) |
| Respondent. | ) |

17    **I.    SUMMARY**

18          On April 21, 2014, Tasi Faainaflo Lemusu ("petitioner"), a state prisoner

19    proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant

20    to 28 U.S.C. § 2254.  Petitioner challenges his second degree murder conviction in

21    Los Angeles County Superior Court based on the trial court's failure *sua sponte* to

22    give a jury instruction.  (Petition at 5).  On December 19, 2014, respondent filed

23    an Answer and a supporting memorandum ("Answer").[1]  Petitioner did not file a

24    Reply.

25
26
27          [1]Respondent concurrently lodged multiple documents ("Lodged Doc."), including the
28    Clerk's Transcript ("CT") and the Reporter's Transcript ("RT").

The parties have consented to proceed before the undersigned United States Magistrate Judge.

For the reasons stated below, the Petition is denied, and this action is dismissed with prejudice.

## II.    PROCEDURAL HISTORY

On June 8, 2012, a Los Angeles County Superior Court jury found petitioner not guilty of first degree murder and guilty of the second degree murder of Danny Logan.  (CT 108-09).  The jury also found true an allegation that petitioner personally used a deadly and dangerous weapon – a sharp instrument – in the commission of such offense.  (CT 109).  On May 30, 2012, the trial court sentenced petitioner to sixteen years to life in state prison.  (CT 115-18).

On June 25, 2013, the California Court of Appeal affirmed the judgment in a reasoned opinion and subsequently denied rehearing.  (Lodged Docs. 2, 3).  On September 11, 2013, the California Supreme Court denied review without comment.  (Lodged Doc. 6).

## III.   FACTS[2]

### A.    Prosecution Evidence

Danny Logan was killed outside a homeless camp under a bridge in Long Beach.  "Rah Rah" and his girlfriend "Crazy" lived in the camp and, about 11:00 p.m. on September 12, 2011, started to argue.[3]  Rah Rah threw a rock at Crazy's tent and threatened to attack her.  Logan, a fellow resident of the camp, exited his tent and told the couple to keep their voices down.  Rah Rah told Logan to mind his own business and the two argued and shoved each other.  Logan knocked Rah

---

[2]The facts set forth are drawn from the California Court of Appeal's decision on direct appeal.  (Lodged Doc. 2 at 2-3).  Such factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

[3]Testimony did not reveal Rah Rah's or Crazy's given names.  Thus, the Court refers to them by their nicknames.

Rah to the ground several times, and Logan dragged Rah Rah on the ground a few feet. Rah Rah then hit Logan on the top of the shoulder with a large metal flashlight.

At that point, petitioner jumped off of the wall where he had been sitting, approached Logan and Rah Rah, and stabbed Logan with a sharp object. Logan fled with petitioner and Rah Rah in pursuit. Logan eventually collapsed on the shoulder of a nearby freeway. Two police officers who found Logan reported that he said he had been stabbed under the nearby bridge but did not know who had stabbed him. Logan died the next day from a punctured lung.

The medical examiner who performed the autopsy on Logan determined that he had methamphetamine and marijuana in his system, but that the methamphetamine level was "pretty low."

### B.    Defense Evidence

Petitioner did not testify. A defense expert determined from toxicology reports that Logan was under the influence of methamphetamine at the time of the incident. As a result, Logan was likely aggravated, irritable, and unable to think rationally. The presence of drugs in his body also increased the likelihood that he would act in a violent manner.

## IV.    STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a

1   decision that was based on an unreasonable determination of the facts in light of

2   the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[4]

3     In applying the foregoing standards, federal courts look to the last reasoned

4   state court decision.  See Smith v. Hedgpeth, 706 F.3d 1099, 1102 (9th Cir.), cert.

5   denied, 133 S. Ct. 1831 (2013).  "Where there has been one reasoned state

6   judgment rejecting a federal claim, later unexplained orders upholding that

7   judgment or rejecting the same claim rest upon the same ground."  Ylst v.

8   Nunnemaker, 501 U.S. 797, 803 (1991) (cited with approval in Johnson v.

9   Williams, 133 S. Ct. 1088, 1094 n.1 (2013)); Cannedy v. Adams, 706 F.3d 1148,

10   1158 (9th Cir. 2013) (it remains Ninth Circuit practice to "look through" summary

11   denials of discretionary review to the last reasoned state-court decision), as

12   amended on denial of rehearing, 733 F.3d 794 (9th Cir. 2013), cert. denied, 134 S.

13   Ct. 1001 (2014).

14   **V.   DISCUSSION**[5]

15     As the Petition is not a model of clarity, the Court liberally construes the

16   Petition to raise the same jury instruction claim asserted on direct appeal in the

17   petition for review – that the trial court improperly failed *sua sponte* to instruct,

18   and to include within its voluntary manslaughter instruction to the jury, that

19   conduct which might otherwise fall within the construct of implied malice second

20   degree murder – the commission of an intentional act, the natural consequences of

21   which were known to petitioner to be dangerous to human life – nonetheless

---

23     [4]When a federal claim has been presented to a state court and the state court has denied

24   relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

25   of any indication or state-law procedural principles to the contrary.  Harrington v. Richter, 562
  U.S. 86, 99 (2011); see also Johnson v. Williams, 133 S. Ct. 1088, 1094-96 (2013) (extending

26   Richter presumption to situations in which state court opinion addresses some, but not all, of
  defendant's claims).

27

28     [5]The Court has read, considered and rejected on the merits all of petitioner's contentions.
  The Court discusses petitioner's principal contentions herein.

4

1    constituted voluntary manslaughter when committed under sudden quarrel/heat of

2    passion.  (Petition at 5; Lodged Doc. 5 at 2-9).  The California Court of Appeal –

3    the last state court to issue a reasoned decision addressing this claim – rejected it

4    on the merits.  (Lodged Doc. 2 at 5-6).  Petitioner is not entitled to federal habeas

5    relief on this claim.

6       **A.    Background**[6]

7       Murder is the unlawful killing of a human being with malice aforethought.

8    Cal. Penal Code § 187.  All murders that are not of the first degree are of the

9    second degree.  (Cal. Penal Code § 189).  Second degree murder requires a mental

10   state of express or implied malice.  People v. Knoller, 41 Cal. 4th 139, 151 (2007).

11   Express malice is an intent to kill.  People v. Gonzalez, 54 Cal. 4th 643, 653

12   (2012).  Malice is implied when a person willfully commits an act, the natural and

13   probable consequences of which are dangerous to human life, and the person

14   knowingly acts with conscious disregard for life.  Id.

15      Manslaughter is a lesser included offense of murder.  Cal. Penal Code

16   § 192; People v. Thomas, 53 Cal. 4th 771, 813 (2012), cert. denied, 133 S. Ct. 380

17   (2012).  A defendant commits voluntary manslaughter when a homicide that

18   otherwise appears to have been committed with express or implied malice, and

19   thus would constitute murder, is nevertheless mitigated and reduced to

20   manslaughter.  People v. Bryant, 56 Cal. 4th 959, 968 (2013).  Intentional killings

21   committed as a result of a heat of passion or in unreasonable self-defense have

22   been deemed to negate the malice required for murder.  People v. Milward, 52 Cal.

23   4th 580, 587 (2011); People v. Rios, 23 Cal. 4th 450, 467 (2000).

24      In this case, the prosecution tried the case on alternative theories of express

25   or implied malice.  The trial court instructed the jury on these theories.  (RT 323-

26   _____

27      [6]Unless otherwise indicated by a citation to the record, the facts set forth are drawn from
     the California Court of Appeal's decision on direct appeal.  (Lodged Doc. 2 at 3).  Such factual
28   findings are presumed correct.  28 U.S.C. § 2254(e)(1).

1  24, 326-29; CT 93, 96, 97) (CALCRIM 500, 520, 521).  The court also found
2  sufficient evidence to instruct the jury on the lesser included offense of voluntary
3  manslaughter.  To that end, the court gave the jury instructions regarding heat of
4  passion voluntary manslaughter and imperfect self-defense voluntary
5  manslaughter.  (RT 329-32; CT 98-100) (CALCRIM Nos. 570, 571).  In line with
6  the defense theory, the trial court instructed the jury on self-defense and defense of
7  another.  (RT 324-26; CT 94) (CALCRIM No. 505).  As noted above, petitioner
8  was convicted by a jury of second degree murder with a sharp weapon
9  enhancement and was sentenced to state prison for sixteen years to life.

10      **B.    Pertinent Law**
11      Claims of error concerning state jury instructions are generally matters of
12  state law only.  See Gilmore v. Taylor, 508 U.S. 333, 343 (1993) ("instructional
13  errors of state law generally may not form the basis for federal habeas relief"); see
14  also Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005) (any error in state
15  court's determination of whether state law allowed for instruction in case cannot
16  form basis for federal habeas relief).  An instructional error "does not alone raise a
17  ground cognizable in a federal habeas corpus proceeding." Dunckhurst v. Deeds,
18  859 F.2d 110, 114 (9th Cir. 1988); see also Van Pilon v. Reed, 799 F.2d 1332,
19  1342 (9th Cir. 1986) (claims that merely challenge correctness of jury instructions
20  under state law cannot reasonably be construed to allege a deprivation of federal
21  rights) (citation omitted).  Federal habeas relief based upon a claim of instructional
22  error is available only when a petitioner demonstrates that "[an] ailing instruction
23  by itself so infected the entire trial that the resulting conviction violates due
24  process." Estelle v. McGuire, 502 U.S. 62, 72 (1991); see also Waddington v.
25  Sarausad, 555 U.S. 179, 191 (2009) (same) (citations omitted).  A challenged
26  instruction must be evaluated in the context of the other jury instructions and the
27  trial record as a whole, not in artificial isolation.  Waddington, 555 U.S. at 191
28  (citations omitted).

1    Because due process requires that "'criminal defendants be afforded a
2    meaningful opportunity to present a complete defense[,]'" <u>Clark v. Brown</u>, 450
3    F.3d 898, 904 (9th Cir.) (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485
4    (1984)), <u>cert. denied</u>, 549 U.S. 1027 (2006), a criminal defendant is entitled to
5    adequate instructions on the defense theory of the case, <u>Conde v. Henry</u>, 198 F.3d
6    734, 739 (9th Cir. 2000), "if the theory is legally cognizable and there is evidence
7    upon which the jury could rationally find for the defendant." <u>United States v.</u>
8    <u>Boulware</u>, 558 F.3d 971, 974 (9th Cir.), <u>cert. denied</u>, 588 U.S. 1048 (2009). "On
9    the other hand, a trial court may preclude a defense theory where the evidence . . .
10   is insufficient as a matter of law to support the proffered defense." <u>Id.</u> (citation
11   omitted). The defendant is not entitled to jury instructions in his precise terms
12   where the given instructions adequately embody his theory. <u>United States v. Del</u>
13   <u>Muro</u>, 87 F.3d 1078, 1081 (9th Cir. 1996).

14       Whether a constitutional violation has occurred depends on the evidence in
15   the case and the overall instructions given to the jury. <u>See</u> <u>Duckett v. Godinez</u>,
16   67 F.3d 734, 745 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1158 (1996); <u>Cupp v.</u>
17   <u>Naughten</u>, 414 U.S. 141, 147 (1973). The omission of an instruction is less likely
18   to be prejudicial than a misstatement of the law. <u>See</u> <u>Walker v. Endell</u>, 850 F.2d
19   470, 475-76 (9th Cir. 1987) (citing <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155
20   (1977)), <u>cert. denied</u>, 488 U.S. 926, 981 (1988). Thus, a habeas petitioner alleging
21   a failure to give an instruction bears an "'especially heavy burden.'" <u>Villafuerte v.</u>
22   <u>Stewart</u>, 111 F.3d 616, 624 (9th Cir. 1997) (quoting <u>Henderson</u>, 431 U.S. at 155),
23   <u>cert. denied</u>, 522 U.S. 1079 (1998). The significance of the omission may be
24   evaluated by comparison with the instructions that were given. <u>Murtishaw v.</u>
25   <u>Woodford</u>, 255 F.3d 926, 971 (9th Cir. 2001) (quoting <u>Henderson</u>, 431 U.S. at
26   156), <u>cert. denied</u>, 535 U.S. 935 (2002).

27       Errors in jury instructions are subject to harmless error analysis and do not
28   merit habeas relief unless such error had a substantial and injurious effect or

1   influence in determining the jury's verdict.  <u>Hedgpeth v. Pulido</u>, 555 U.S. 57, 61-
2   62 (2008) (per curiam) (citing <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993)).

3   **C.   Analysis**

4       Petitioner is not entitled to federal habeas relief on his sole instructional
5   error claim.

6       First, to the extent petitioner contends that the trial court's asserted failure,
7   *sua sponte*, to instruct the jury in the manner he now identifies violated state law,
8   his claim is not cognizable on federal habeas review.  <u>See</u> <u>Estelle</u>, 502 U.S. at 71-
9   72 ("[T]he fact that the instruction was allegedly incorrect under state law is not a
10  basis for habeas relief."); <u>Van Pilon</u>, 799 F.2d at 1342 (citation omitted).

11      Second, petitioner has not shown that the trial court committed error under
12  state law, much less an error of constitutional magnitude.  Here, the trial court
13  instructed the jury on first degree murder, second degree murder, and voluntary
14  manslaughter.  (RT 323-32; CT 93-100).  To the extent petitioner argues that the
15  trial court failed to instruct the jury that a killing committed with implied malice
16  could constitute voluntary manslaughter if it occurred during a sudden quarrel or
17  heat of passion, such assertion is belied by the record as the court did so instruct,
18  as the Court of Appeal reasonably determined.  (RT 329-31; CT 98; Lodged Doc.
19  2 at 5) ("[T]he instructions informed the jury that the crime was reduced to
20  voluntary manslaughter if it occurred during a sudden quarrel or in the heat of
21  passion.").  To the extent petitioner argues that a different voluntary manslaughter
22  instruction was preferable or that the trial court should nonetheless have
23  incorporated into the voluntary manslaughter instruction itself an advisement that
24  conduct which might otherwise fall within the construct of implied malice second
25  degree murder – the commission of an intentional act, the natural consequences of
26  which were known to petitioner to be dangerous to human life – nonetheless
27  constituted voluntary manslaughter when committed under sudden quarrel/heat of
28  ///

8

1    passion (Lodged Doc. 5 at 3-4), the Court of Appeal likewise reasonably rejected

2    such claim:

3            [Petitioner] prefers the instruction on voluntary manslaughter

4        in CALJIC 8.40 to the one given in this case.[7]  [Citation].  Although

5        the instruction given was not identical to CALJIC No. 8.40, it

6        properly instructed the jury on voluntary manslaughter.  [Citation].

7            Finally, [petitioner] argues that the court was required to

8        describe implied malice within the voluntary manslaughter instruction

9        itself.  [Petitioner] recognizes that the court instructed the jury on

10       implied malice.  Specifically, the court instructed the jury as follows:

11       "The defendant acted with implied malice if:  [¶] 1. He intentionally

12       committed an act; [¶] 2. The natural and probable consequences of the

13       act were dangerous to human life; [¶] 3. At the time he acted, he knew

14       his act was dangerous to human life; [¶] AND [¶] 4. He deliberately

15       acted with conscious disregard for human life."  (CALCRIM 520.)

16       [Petitioner's] argument lacks merits because jury instructions must be

17       considered as a whole and as [petitioner] acknowledges jurors were

18       instructed on implied malice.  [Citation].  [Petitioner] has

19       demonstrated no instructional error. . . ."

20   (Lodged Doc. 2 at 5-6) (internal citations and footnote omitted).  This Court is

21   bound by the Court of Appeal's determination that the trial court's instructions

22   correctly set out California state law on such matters and that the court properly

23   instructed the jury on voluntary manslaughter and implied malice.  See Mullaney

24   v. Wilbur, 421 U.S. 684, 691 (1975) (state courts ultimate expositors of state law);

25   Mendez v. Small, 298 F.3d 1154, 1158 (9th Cir. 2002) (state court has last word

26   _____

27       [7]CALJIC 8.40 provides that "[e]very person who unlawfully kills another human being
     without malice aforethought but either with an intent to kill, or with conscious disregard for
28   human life, is guilty of voluntary manslaughter . . . ."  (Brackets omitted).

on interpretation of state law).  Since the trial court's instructions were consistent with state law, and thus were not "ailing," no due process violation occurred.  See Waddington, 555 U.S. at 191; Estelle, 502 U.S. at 72.

Third, even assuming the trial court constitutionally erred by failing *sua sponte* to instruct the jury as petitioner now asserts, this Court concludes that when considering the record and jury instructions as a whole, any such error was harmless and did not have a substantial and injurious effect or influence in determining the jury's verdict particularly since the instructions given adequately embodied his theory of the defense.  Hedgpeth, 555 U.S. at 61-62 (2008) (citing Brecht, 507 U.S. at 623).

In short, the California Court of Appeal's rejection of petitioner's instant jury instruction claim was not contrary to, or an objectively unreasonable application of, any clearly established federal law.  Nor did it constitute an unreasonable determination of the facts in light of the evidence presented. Accordingly, petitioner is not entitled to federal habeas relief.

## VI.   ORDERS

IT IS THEREFORE ORDERED that (1) the Petition is denied and this action is dismissed with prejudice; and (2) Judgment shall be entered accordingly.

DATED: April 27, 2015

_____
/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE